UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| REACH VENTURES, LLC, an Idaho limited liability company<br><br>      Plaintiff,<br><br>v.<br><br>DENOVO BRANDS, LLC, an Arkansas limited liability company; and DENOVO (HK) LIMITED, a subsidiary of DENOVO BRANDS, LLC,<br><br>      Defendants. | Case No. 1:24-cv-00085-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is a Motion to Dismiss filed by Defendants Denovo Brands, LLC ("Denovo") and Denovo (HK) Limited ("DHK") (together, the "Defendants"). Dkt. 4. Also before the Court is a Motion for Extension filed by Plaintiff Reach Ventures, LLC ("Reach"). Dkt. 9. Both motions are now ripe.

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motions on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the reasons outlined below, the Court DENIES

the Motion to Dismiss in PART and GRANTS the Motion for Extension.

## II. BACKGROUND

**A. Factual Background**

Reach is an online retailer. Denovo is an Arkansas company that makes chairs and other outdoor products. DHK is a subsidiary of Denovo based in Hong Kong. In August 2022, Reach and Denovo entered an agreement under which Reach would purchase certain products from Denovo to sell online (the "August Agreement"). The August Agreement contains a clause stating, "this Agreement is entered into and enforceable under the law of the State of Arkansas, where exclusive personal jurisdiction lies." Dkt. 4-1, at 8. In September 2022, Reach entered a similar agreement with DHK that contained an identical choice-of-law and jurisdictional clause (the "September Agreement").

According to Defendants, in October 2022, Reach and Denovo agreed to modify a payment term in the August Agreement. Jay Schrade was the Denovo employee tasked with preparing the modification. Dkt. 4-1, at 2–3. According to Schrade, instead of modifying the final, agreed-upon version of the August Agreement, he mistakenly modified an earlier draft that listed Idaho—not Arkansas—as the proper venue and choice of law. *Id.* at 3. Schrade submitted an affidavit, testifying that, without noticing his error, he sent the modified document to Reach, alongside an email saying,

> Attached is the word document with the correct terms we discussed on the phone. The only change made on this document from the Docusign is section 3, the payment terms are 70 days from the date product is shipped by the manufacturer, instead of 70 days from receipt by the re-seller.

*Id.* at 3. Reach signed the modified agreement (the "October Agreement").

MEMORANDUM DECISION AND ORDER – 2

### B. Procedural Background

The relationship between Reach and Defendants eventually broke down. In October 2023, Reach filed suit against Denovo and DHK in Idaho state court, asserting breach of contract and breach of the implied covenant of good faith and fair dealing. *See generally* Dkt. 1. Defendants subsequently removed the case to this Court. Roughly one month after Reach filed suit in Idaho, Denovo filed suit against Reach in California state court, alleging breach of contract, but that suit was later dismissed at Denovo's request. In January 2024, Denovo filed a similar complaint against Reach in Arkansas state court, which Reach removed to Arkansas federal court.[1]

Reach promptly moved the Arkansas court to dismiss that action, while Defendants moved this Court to dismiss this action. Dkt. 4. In both courts, Defendants claimed that the parties agreed to the exclusive personal jurisdiction of Arkansas, and that neither defendant has had sufficient contact with Idaho for an Idaho court to exercise personal jurisdiction over it. *See generally* Dkt. 4; Ark. Dkt. 34. On the other hand, Reach argued that the forum selection clause in the October Agreement requires the parties litigate in Idaho. Dkt. 8; Atk. Dkt. 34.

With commendable speed, the Arkansas court ordered the parties to engage in a brief period of discovery regarding the validity of the October Agreement's forum selection clause, among other things. Ark. Dkt. 31. Shortly thereafter, it issued an order, holding the October Agreement's forum selection clause to be valid, making this Court the proper

---

[1] The case number for the Arkansas case is 5:24-cv-05043-TLB. The Court references filings in that case with the abbreviation Ark. Dkt. [X].

venue to decide the claims between Reach and Denovo. Ark. Dkt. 34, at 10–12. The Arkansas court also held that, because the Idaho case was filed first, and because it would be infeasible to separate the claims arising out of the October Agreement from those arising out of the September Agreement,[2] this Court is also the proper venue to decide the claims between Reach and *DHK*. *Id.* at 12–14. Accordingly, it dismissed the litigation there without prejudice.[3]

Upon learning of the Arkansas court's order, this Court asked each party to submit a brief update detailing how the conclusion of the Arkansas litigation impacted the motions pending here, if at all. Dkt. 14. Reach summarized the decision from the Arkansas Court and argued that the question of this Court's personal jurisdiction over Defendants is now foreclosed under the doctrine of res judicata. Dkt. 15, at 3–4. Defendants expressed their disagreement with the Arkansas decision and stated their intent to appeal. Dkt. 16, at 2. They then asked the Court—informally—to stay these proceedings until their appeal is resolved. *Id.* at 2–3.

### III. LEGAL STANDARDS

The Court will set forth the applicable legal standards here, then proceed with its analysis below.

---

[2] The September Agreement is between Reach and DHK, not Denovo, and contains an unchanged Arkansas forum selection clause.

[3] The Arkansas court opted not to take the additional procedural step of transferring the Arkansas proceedings to this Court because both cases were in essentially the same procedural posture, meaning Defendants could—and still can—raise any counterclaims or defenses they desire. *Id.* at 14.

### A. Personal Jurisdiction and Forum Selection

Federal courts look to state law to determine the extent of their jurisdiction over persons. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). "Because Idaho's long-arm statute, codified in Idaho Code § 5-514, allows a broader application of personal jurisdiction than the Due Process Clause, the Court need look only to the Due Process Clause to determine personal jurisdiction." *Wells Cargo, Inc. v. Transport Ins. Co.*, 676 F. Supp. 2d 1114, 1119 (D. Idaho Dec. 13, 2009); *see also Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987) ("The Idaho legislature, in adopting [I.C. § 5-514], intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution.").

Under the Due Process Clause, a court can exercise jurisdiction over a defendant only if the defendant "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). Courts recognize two forms of personal jurisdiction—general and specific. *Lake*, 817 F.2d at 1420–21. A court may exercise general personal jurisdiction over a defendant whose contacts with the forum state have been continuous, systematic, or substantial. *Id.* at 1420. Where a defendant lacks such contacts, a court may exercise specific personal jurisdiction if the following conditions are met:

> (1) The nonresident defendant must purposefully direct his activities or consummate some transaction with the forum or residents thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates

MEMORANDUM DECISION AND ORDER – 5

to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Id.* at 1421.

Where general personal jurisdiction and specific personal jurisdiction are both lacking, a court may nevertheless exercise jurisdiction over a party if that party has consented to the personal jurisdiction of the forum through a forum selection clause in a contract. *See, e.g.*, *S.E.C. v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). A forum selection clause "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Supreme Court and the Ninth Circuit have clarified that a forum selection clause should be set aside only where a challenging party shows:

> (1) the clause is invalid due to "fraud or overreaching," (2) "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision," or (3) "trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court."

*Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018) (quoting *M/S Bremen*, 407 U.S. at 15, 18).

Idaho Code § 29-110(1) provides: "Every stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract in Idaho tribunals . . . is void as it is against the public policy of Idaho." The Ninth Circuit has interpreted this statute to be a strong declaration of Idaho's public policy. *Gemini Technologies, Inc. v. Smith & Wesson Corp.*, 931 F.3d 911, 916 (9th Cir. 2019).

When sitting in diversity, federal courts rely on federal contract law to "interpret the

*scope* of a forum-selection clause." *See Sun*, 901 F.3d at 1088 (emphasis added). But when courts are called upon to determine the *validity* of a forum-selection clause, whether courts should apply federal contract law or state contract law is not entirely clear. The Ninth Circuit acknowledged the ambiguity surrounding this question in *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, but did not decide the issue one way or the other. 28 F.4th 956, 963–64 (9th Cir. 2002). As the Ninth Circuit noted there, many Ninth Circuit district courts look to state law to evaluate the validity of a forum selection clause, reasoning that contract formation—including the adoption of a forum selection clause—is a fundamental concern of state law. *Pierman v. Stryker Corp.*, 2022 WL 406679, at *4 n.4 (S.D. Cal. Jan 24, 2020); *see also Glob. Power Supply, LLC v. Acoustical Sheetmetal Inc.*, 2018 WL 3414056, at *2 (C.D. Cal. July 9, 2018); *Whipple Indus., Inc. v. Opcon AB*, 2005 WL 2175871, at *1 n.2 (E.D. Cal. Spet. 7, 2005); *Kellerman v. Inter Island Launch*, 2015 WL 6620604, at *3 (W.D. Wash. Oct. 30, 2015). The Court is persuaded by this line of reasoning. Accordingly, it applies Idaho contract-law principles in evaluating the validity of the forum selection clauses at issue in this case. *See Taco Bell Corp. v. TBWA Chiat/Day Inc.*, 552 F.3d 1137, 1144 (9th Cir. 2009) ("Federal common law requires application of the law that would be applied by state courts in the State in which the federal diversity court sits.") (cleaned up).

**B. Parol Evidence**

Under Idaho law, "[i]f the written agreement is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the contract." *Belk v. Martin*, 39 P.3d 592, 597 (Idaho

2001). However, parol—or extrinsic—evidence may be introduced "to clarify that a term of the contract was a mistake," or "to prove that by reason of mutual mistake the written agreement does not express the parties' true intent." *Id.*

### C. Mistake

In contracting, "a mistake is an unintentional act or omission arising from ignorance, surprise, or misplaced confidence." *Leydet v. City of Mountain Home*, 812 P.2d 755, 758 (Idaho Ct. App. 1991). Mistakes may be unilateral or mutual. *Id.* A court may modify or rescind a contract containing a unilateral mistake only "if there has been a misrepresentation or knowledge of the mistake by the other party." *Belk*, 39 P.3d at 597.

"A mutual mistake occurs when both parties, at the time of contracting, share a misconception regarding a basic assumption or vital fact upon which the bargain is based." *Hughes v. Fisher*, 129 P.3d 1223, 1231 (Idaho 2006) (cleaned up). "Mutual mistake permits a party to rescind or modify a contract as long as the mistake is so substantial and fundamental as to defeat the object of that party." *O'Connor v. Harger Cons., Inc.*, 188 P.3d 846, 851 (Idaho 2008) (cleaned up). "The mistake must be common to both parties, and must be proven by clear and convincing evidence." *Id.* In other words, the existence and mutuality of the mistake must be "highly probable or reasonably certain." *In Int. of Doe I*, 411 P.3d 1175, 1178 (Idaho 2018).

### D. Equitable Estoppel

The doctrine of equitable estoppel prevents a party from benefiting by strategically taking inconsistent positions. *See Regjovich v. First Western Investments, Inc.*, 997 P.2d 615, 619 (Idaho 2000). To successfully establish equitable estoppel, a party must show:

> (1) the party against whom the doctrine is sought to be invoked falsely represented or concealed a material fact with actual or constructive knowledge of the truth; (2) the party asserting equitable estoppel did not know or could not know the truth; (3) the false representation or concealment was made with the intent that it be relied on; and (4) the complaining party did in fact rely to his or her or its detriment.

*Christensen v. City of Pocatello*, 124 P.3d 1008, 1015 (Idaho 2005). "All elements of equitable estoppel are of equal importance, and there can be no estoppel absent any of the elements." *Winn v. Campbell*, 184 P.3d 852, 857 (Idaho 2008) (cleaned up).

Regarding the second prong, "Idaho courts have long determined that one may not assert estoppel based upon another's misrepresentation if the one claiming estoppel had readily accessible means to discover the truth." *Regjovich*, 997 P.2d at 619. For example, in *Regjovich*, the court found that, although one party's misrepresentation regarding the ownership of a piece of property was troublesome, because the other party could have discovered the property's true owner with reasonable diligence, equitable estoppel could not apply. *Id.* at 620.

### IV. ANALYSIS

In their Motion to Dismiss, Defendants argue that the October Agreement's forum selection clause is invalid because it was the product of a mutual mistake and because it was not freely negotiated. Dkt. 10, at 5–8. Next, they request that, if the Court is satisfied Reach knew the forum selection clause was changed by mistake, the Court equitably estop Reach from asserting the mistake to be a unilateral one. *Id.* at 8. Finally, Defendants contend that regardless of the Court's findings related to the August and October Agreements, the September Agreement was never changed and clearly requires the parties to that agreement

to submit to the exclusive jurisdiction of Arkansas courts. That fact, coupled with the fact that DHK was never properly served suggest that, at very least, DHK should be dismissed as a party. *Id.* at 9–10.

The Court will begin with a brief discussion of Defendants informal request for a stay. Because it denies that request, the Court will proceed to an analysis of personal jurisdiction as to Denovo. It will then turn to personal jurisdiction as to DHK. Finally, it will address Reach's Motion for Extension.

### A. Defendants' Request for a Stay

As an initial matter, the Court notes that Defendants have yet to formally move for a stay of these proceedings. The passing request in their status report is not styled as a motion, nor was it filed as a motion. *See* Dkt. 16, at 2–3. However, even if it were, the Court finds that its resolution of the pending motions may prove valuable in informing the parties regarding the best course of action moving forward. At very least, the Court's order can inform Defendants' appeal. Accordingly, the Court would decline to exercise its "broad discretion to stay proceedings," at least until after disposing of the pending motions. *Clinton v. Jones*, 520 U.S. 681, 706–07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). If, after reading this Order, Defendants would still like a stay, they may file a motion requesting one.

### B. Reach and Denovo

#### *1. Mistake*

To establish that the October Agreement was the product of a mutual mistake, Defendants would need to show it is highly probable or reasonably certain that both

MEMORANDUM DECISION AND ORDER – 10

Denovo and Reach intended Arkansas to be their forum-of-choice, despite the October Agreement's language to the contrary.

To support its position, Defendants introduce the affidavit from Schrade. Because Defendants are alleging that the Idaho forum selection clause in the October Agreement is the product of a mistake, the Court may consider extrinsic evidence, such as Schrade's affidavit and email. *See Belk*, 39 P.3d at 597. But Schrade's testimony can speak only to *Denovo's* intent in entering the October Agreement, not *Reach's*. In light of Schrade's affidavit, it is possible Reach failed to notice the change to the forum selection clause or that it believed the change to be a fortuitous blunder by Denovo and chose to remain silent in hopes of someday using the clause to its advantage. But it is equally possible that Reach thought Schrade's email simply misstated the contents of the updated agreement, and that the updated agreement itself fully reflected Denovo's intent. In other words, Schrade's affidavit proves less than Defendants need it to.

Defendants assert baldly "[i]f Reach had noticed the change to the governing law section, it surely would have notified Denovo . . . ." Dkt. 10, at 6. But this is speculation. Reach could just as easily have assumed that Denovo had read and intended to send the document it sent. Defendants also makes a fledgling attempt to shift their burden to Reach, claiming that Reach has "produced no evidence or allegation in this matter that the change to venue was not a mutual mistake." *Id.* at 7. But as the parties moving for dismissal, Defendants—not Reach—bear the burden of convincingly establishing the existence and mutuality of a mistake. And Schrade's word alone is not enough to carry that burden.

Because the forum selection clause in the October Agreement appears to be the

MEMORANDUM DECISION AND ORDER – 11

product of a unilateral mistake, and not a mutual mistake, the Court could modify or rescind the agreement only if it were to find "there has been a misrepresentation or knowledge of the mistake" by Reach. *Belk*, 39 P.3d at 597. But, for the reasons discussed above, it can make no such finding here. Accordingly, it declines to modify or rescind the agreement.

### 2. Free Negotiation

Defendants next invoke language from *Burger King Corp. v. Rudzewicz*, arguing that the October Agreement's forum selection clause cannot control because it was not "freely negotiated." 471 U.S. 462, 473 n.14 (1985). But their free-negotiation argument depends entirely on the already-debunked assumption that the October Agreement was the product of a mutual mistake. *See* Dkt. 10, at 7 ("No bargaining or negotiating took place regarding this modified forum selection clause because, due to mutual mistake, the parties were unaware that the modified agreement gave Idaho jurisdiction."). Just as the Schrade affidavit is insufficient to establish mutual mistake, it is insufficient to establish that the October Agreement was not the product of free negotiation.

### 3. Equitable Estoppel

Reach has taken the position that, to the extent the Idaho forum selection clause may be considered a mistake, it is a unilateral one. Dkt. 8, at 7. In other words, Denovo may have intended the October Agreement to include an Arkansas forum selection clause, but Reach did not share that intent when it signed the agreement. *Id.* Defendants contend that the doctrine of equitable estoppel should prevent Reach from taking this position. Below, the Court will apply the equitable estoppel factors to the facts here.

      a. <u>Whether Reach Misrepresented or Concealed the Clause While Knowing it to Be a Mistake</u>

From Defendants' point of view, Schrade's affidavit establishes that Reach knew or should have known that the Idaho forum selection clause was a mistake. Dkt. 10, at 8–9. Thus, Reach's failure to raise the mistake to Denovo constitutes concealment. But the Court is not convinced Reach had the knowledge with which it is imputed. Again, it is possible that Reach failed to notice the Idaho clause or believed it to be a mistake. But it is also possible that Reach assumed Schrade's email to be mistaken, and the October Agreement to reflect Denovo's true intent. Denovo has produced no evidence regarding what Reach actually knew, and the Schrade affidavit is not enough for the Court to conclude Reach had constructive knowledge that the forum selection clause was not what Denovo intended.

      b. <u>Whether Denovo Knew or Could Have Known the Truth</u>

As noted above, a party that had "readily accessible means to discover the truth" cannot assert estoppel, even if the other party misrepresented or concealed material facts. *Regjovich*, 997 P.2d at 619. Thus, even if the Court's analysis under the first estoppel prong is erroneous, the proverbial buck stops here.

Before the final version of the October Agreement was sent to Reach, it was under the total control of Denovo. Had Denovo *read it* before sending, it could have caught and corrected any errors therein. Apparently, Denovo did not read the document it sent. But this was not for lack of access—it was for lack of diligence.

Because "there can be no estoppel absent any of the elements," and because Defendants have not successfully established either of the first two elements, their request

MEMORANDUM DECISION AND ORDER – 13

for estoppel must fail. *Winn*, 184 P.3d 852, 857 (Idaho 2008) (cleaned up). Accordingly, and for the sake of brevity, the Court will forgo an analysis of the other two prongs.

### 4. Conclusion

The forum selection clause of the October Agreement clearly subjects the parties to the exclusive jurisdiction of Idaho. Dkt. 8, at 18. Because Defendants moved for dismissal, they bear the burden of showing the clause is invalid. They have not carried that burden. Nor have they shown that Reach should be estopped from taking the position it has taken. Accordingly, the Court determines the clause to be controlling, and DENIES Defendants' Motion as to Denovo.

**C. Reach and DHK**

The relationship between Reach and DHK is governed by the September Agreement, not the October Agreement. *Id.* at 34–36. The September Agreement unambiguously states that it is "entered into and enforceable under the laws of the State of Arkansas, where exclusive personal jurisdiction lies." *Id.* at 36. Neither party contests the validity of this clause. Accordingly, the Court looks to whether the clause is the product of fraud or overreaching, whether enforcement would contravene a strong public policy of Idaho, or whether trial in Arkansas would deprive Reach of its day in court. *See Yei A. Sun*, 901 F.3d at 1088.

Idaho Code § 29-110(1) makes clear that Idaho has a strong public policy against agreements that restrict parties from "enforcing [their] rights . . . in Idaho tribunals." *See Gemini*, 931 F.3d at 916. The September Agreement purports to do just that, by granting "exclusive personal jurisdiction" to Arkansas. Dkt. 8, at 36. Accordingly, the Court finds

that enforcing the forum selection clause in the September Agreement would contravene a strong public policy of Idaho and deems the clause invalid. *See Jimenez v. HemaTerra Technologies, LLC*, 2023 WL 2354754, at *4 (D. Idaho Mar. 3, 2023) (invalidating a similar clause on the same grounds).

However, the fact that the September Agreement's forum selection clause is invalid does not automatically grant the Court personal jurisdiction over DHK. Unlike Denovo, DHK never signed an agreement consenting to personal jurisdiction in Idaho. Accordingly, the Court must look to whether DHK has had sufficient contacts with Idaho to justify an exercise of personal jurisdiction.

There is no evidence in the record that DHK has had sufficient contact with Idaho to grant Idaho courts general or specific personal jurisdiction. As far as the Court can tell, the only contact DHK has had with Idaho is its entry into a contract with Reach—and Idaho company. But, entering a contract with a party from a particular forum is generally not enough contact, on its own, for a court in that forum to exercise specific personal jurisdiction. *See Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) ("A contract alone does not automatically establish minimum contacts in the plaintiff's home forum.") (cleaned up). "Rather, there must be actions by the defendant [itself] that create a substantial connection with the forum state . . . . A defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* The Court has seen no such evidence.

Reach notes in passing that a "parent-subsidiary relationship can impute personal jurisdiction where, among other things, 'control by the parent of the subsidiary is so

complete that the subsidiary is, in fact, merely a department of the parent.'" Dkt. 8, at 6 n.15 (quoting *Bulova Watch Co. v. K Hattori & Co.*, 508 F. Supp. 1322, 1334 (E.D.N.Y. 1981). Here, where Denovo has consented to Idaho personal jurisdiction, if Reach were to show that DHK were "merely a department" of Denovo, then the Court could exercise jurisdiction over DHK. *Bulova*, 508 F. Supp. at 1334. Otherwise, DHK should be dismissed. Additionally, Defendants have argued, without proving, that Reach never properly served DHK. Dkt. 4, at 3; Dkt. 8, at 10. If true, this fact would constitute another reason to dismiss DHK.

In its status report, Reach suggests that the questions of personal jurisdiction in this case are subject to issue preclusion because they were decided by the Arkansas Court. Dkt. 15, at 3. The doctrine of issue preclusion "bars successive litigation of an issue or fact of law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Howard v. City of Coos Bay*, 871 F.3d 1032, 1040–41 (9th Cir. 2017) (cleaned up). But issue preclusion does not quite reach the question of the Court's personal jurisdiction over DHK.

The Arkansas court determined that the forum selection clause in the October Agreement is valid and that, in the face of competing forum selection clauses, the forum wherein the action was first filed is the proper venue to hear claims arising out of both agreements. *See generally* Ark. Dkt. 34. The first determination related solely to Denovo, and the latter determination addressed whether Arkansas or Idaho is the proper venue to hear the claims. But questions of *venue* are distinct from questions of *personal jurisdiction*. *See Meyer v. Young Conaway Stargatt & Taylor LLP*, 2011 WL 1317282, at *3 (D. Idaho

Mar. 21, 2011) (highlighting the difference between the two concepts). The Arkansas court made no finding that this Court has personal jurisdiction over DHK. Accordingly, issue preclusion does not resolve the Court's questions.

As it stands, the record does not reveal the nature of the relationship between Denovo and DHK, nor have Defendants shown that Reach failed to serve DHK. Accordingly, the Court orders discovery and additional briefing on the issues of: (1) whether DHK operates as a "mere department" of Denovo, and (2) whether Reach ever properly served DHK. The parties shall complete such discovery and file simultaneous briefs detailing their findings within thirty (30) days of receiving this order.[4]

### D. Reach's Motion for Extension

Due to a calendaring mistake, Reach filed its response to Defendants' Motion to dismiss one day late. *See* Dkt. 8. Upon recognizing its error, Reach moved for an extension. *See* Dkt. 9. Defendants did not respond to Reach's motion.

Under Federal Rule of Civil Procedure 6(b)(1), a court may grant a motion to extend filed after the deadline if the party's late filing was the result of excusable neglect. In evaluating whether a party's neglect is excusable, courts should consider "(1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010).

Here, extending Reach's deadline by a single day poses minimal, if any, danger of

---

[4] If Defendants still plan to move for a stay, they should do so before this deadline passes. If a stay is imposed before this deadline passes, the Court will adjust the deadline upon lifting the stay.

MEMORANDUM DECISION AND ORDER – 17

prejudice to Defendants and it would have no real impact on the proceedings. The Court had not taken any action on this case between the passing of the deadline and Reach's filing. Additionally, it appears that Reach acted in good faith to remedy its error. Reach's reason for filing late—miscalendaring—is not particularly inspiring. But overall, the factors from *Ahanchian* weigh in favor of granting Reach's Motion. The Court also considers Defendants' non-opposition to the Motion to support this conclusion. Accordingly, the Court GRANTS Reach's Motion for Extension and accepts its brief as filed.

## V. CONCLUSION

Defendants have not shown that the forum selection clause in the October Agreement is the product of a mutual mistake or should otherwise be found invalid. Accordingly, the Court finds the clause to grant it personal jurisdiction over Denovo.

The forum selection clause in the September Agreement is invalid as it contravenes a strong public policy of Idaho. However, before determining whether it may exercise jurisdiction over DHK, the Court needs limited discovery and briefing on the relationship between DHK and Denovo and on whether Reach ever properly served DHK.

Finally, because Reach's untimely filing was the product of excusable neglect, the Court GRANTS Reach's Motion for Extension.

## VI. ORDER

IT IS HEREBY ORDERED:

1. Defendants' Motion to Dismiss (Dkt. 4) is DENIED in PART as outlined above.

MEMORANDUM DECISION AND ORDER – 18

    a. The Court has personal jurisdiction over Denovo. Whether the Court also has personal jurisdiction over DHK will be determined after limited discovery and additional briefing.

2. Within thirty (30) days of issuance of this order, the parties shall conduct limited discovery on the questions identified herein. Once complete, they shall file simultaneous supplemental briefs, not to exceed twelve (12) pages, addressing the Court's questions.

3. Reach's Motion for Extension (Dkt. 9) is GRANTED.

DATED: June 28, 2024

_____
David C. Nye
Chief U.S. District Court Judge